ARCHER, Chief Judge.
 

 DECISION
 

 Andrew and Jeanette Cook (the Cooks) appeal the February 6,1995 judgment of the Court of Federal Claims, No. 93-496 T, dismissing the Cooks’ complaint and granting the United States’ counterclaim for payment of excise tax. We affirm.
 

 BACKGROUND
 

 Andrew and Jeanette Cook are members of the Onondaga Indian Nation. The Cooks own and operate a diesel fuel truck stop along Interstate 81 within the Onondaga Indian Reservation. In 1986 and 1987, the Cooks purchased approximately twelve million gallons of diesel fuel from distributors in Canada which they in turn sold to operators of diesel fuel vehicles. The Cooks did not pay excise tax on the sale of this diesel fuel as required by 26 U.S.C. § 4041(a) (1994). In 1992, the Internal Revenue Service (IRS) assessed excise, LUST
 
 [1]
 
 and environmental taxes and interest against the Cooks for the 1986-87 tax periods. In 1993, the Cooks made partial payment and commenced this suit in the Court of Federal Claims for a refund claiming that they are not liable for the assessed taxes. The government has counterclaimed for the balance of the excise and other taxes and interest assessed.
 

 The Cooks claim that they are exempt from paying federal excise tax by treaties between the Onondaga Nation and the United States. In particular, they cite the Fort Stanwyx Treaty, 7 Stat. 15 (1784) which states that the Indian Nations “shall be secure in the peaceful possession of the lands they inhabit”; the Treaty of Fort Hamar, 7 Stat. 33 (1789) which states that the Indian Nations “shall be secure in the possession of the lands they inhabit”; and the Canandaig-ua Treaty, 7 Stat. 44 (1794) which states that the land reserved to the Onondaga Indian Nation is their property and that the United States will never disturb them “in the free use and enjoyment thereof.” The Cooks contend that pursuant to these treaties they are exempt from the payment of excise tax. The
 
 *1097
 
 Court of Federal Claims carefully considered each of these treaties and concluded that they cannot reasonably be construed as conferring an exemption from federal excise tax.
 

 The Court of Federal Claims held that the treaty language pertains to the use of land, and that the excise tax in question taxes a particular activity, not the land itself or the Cooks’ use of the land. For this reason, the Cooks’ contention, that they are exempt from paying excise tax by the Supreme Court’s decision in
 
 Squire v. Capoeman,
 
 351 U.S. 1, 76 S.Ct. 611, 100 L.Ed. 883 (1956), likewise failed. In
 
 Capoeman,
 
 the Supreme Court held that the General Allotment Act exempted Indian income which was derived directly from the land from federal income tax. 351 U.S. at 7-8, 76 S.Ct. at 615-16. The Court of Federal Claims held that the
 
 Capoeman
 
 exemption only applies to land allotted under the General Allotment Act and there was no showing in this case that the Cook’s land is so restricted. In addition, the Court of Federal Claims found that the income from the operation of a gas station is not income derived directly from the land as required by
 
 Capoeman.
 
 Therefore, the Court of Federal Claims held that the Cooks are required to pay federal excise tax and granted the government’s motion for partial summary judgment. The Cooks now appeal that judgment to this Court.
 

 DISCUSSION
 

 I.
 

 We review the Court of Federal Claims’ grant of summary judgment under a de novo standard of review, with all justifiable factual inferences being drawn in favor of the party opposing summary judgment.
 
 Anderson v. Liberty Lobby, Inc.,
 
 477 U.S. 242, 255, 106 S.Ct. 2505, 2513-14, 91 L.Ed.2d 202 (1986). The underlying questions of treaty interpretation are questions of law which we also review de novo.
 
 Bank Melli Iran v. Pahlavi,
 
 58 F.3d 1406, 1408 (9th Cir.1995);
 
 Yapp v. Reno,
 
 26 F.3d 1562, 1565 (11th Cir.1994).
 

 In the absence of a clear expression to the contrary, general acts of Congress apply to Indians, like all other citizens.
 
 Federal Power Comm’n v. Tuscarora Indian Nation,
 
 362 U.S. 99, 116, 120, 80 S.Ct. 543, 553, 555-56, 4 L.Ed.2d 584 (1960). As the Supreme Court held in
 
 Squire v. Capoeman,
 
 351 U.S. 1, 6, 76 S.Ct. 611, 615, 100 L.Ed. 883 (1956), Indians “are subject to the payment of income taxes as are other citizens---[T]o be valid, exemptions to tax laws should be clearly expressed.” Although this general rule was applied specifically to income tax, the rule applies equally to the federal excise tax in question. The excise tax for the sale of diesel fuel is imposed upon any person who sells to an owner, lessee or operator of a diesel powered vehicle. 26 U.S.C. § 4041(a) (1994). The Court of Federal Claims properly found that “any person” includes Onondaga Indians.
 

 While it is true the treaty rights secured to the Indians by agreement with the government are to be liberally construed,
 
 Red Lake Band v. United States,
 
 17 Cl.Ct. 362, 381 (1989), and that the Indians’ understanding of an agreement informs the court’s interpretation,
 
 Peoria Tribe of Indians v. United States,
 
 390 U.S. 468, 472-73, 88 S.Ct. 1137, 1139-40, 20 L.Ed.2d 39 (1968), there is no language in the treaties cited which could be construed as conferring an exemption from federal excise tax. Absent a definitely expressed exemption, Indians, like all other United States citizens, are subject to federal taxation. We recognize that if there are ambiguities in treaty language, they should be resolved in favor of the Indians.
 
 See Rosebud Sioux Tribe v. Kneip,
 
 430 U.S. 584, 97 S.Ct. 1361, 51 L.Ed.2d 660 (1977). But, we cannot create ambiguities where none exist. Neither the Canandaigua Treaty, the Fort Stanwyx Treaty nor the Treaty of Fort Hamar contains any language which confers an exemption from excise tax or presents an ambiguity which could be resolved in favor of conferring such an exemption.
 

 Contrary to the Cooks’ contentions, the Canandaigua Treaty which grants the Indians “free use and enjoyment” of their land cannot reasonably be interpreted as exempting them from the payment of excise tax. This, like the other treaty provisions at issue which secure the Indians “peaceful pos
 
 *1098
 
 session” of their land, applies to the use of land. Federal excise tax is a tax on the sale of a commodity. As the Court of Federal Claims correctly held, the federal excise tax is a tax on the particular activity of selling diesel fuel, not a tax on the use of the land. Consequently, these treaty provisions do not exempt the Cooks from the assessed excise taxes and the Court of Federal Claims properly granted partial summary judgment in favor of the government.
 

 II.
 

 The Cooks also assert that
 
 Squire v. Capoeman
 
 exempts them from federal excise tax. We disagree. In
 
 Capoeman,
 
 the Supreme Court held that income derived directly from land allotted under the General Allotment Act of 1887 was exempt from income tax. 351 U.S. at 7-8, 76 S.Ct. at 615-16.
 
 Capoeman
 
 does not apply in this ease because the excise tax on diesel fuel is not a tax on income derived directly from the land. The
 
 Capoeman
 
 rule only exempts income from activities that exploit the land, such as the sale of timber from the Indian land. It does not apply to a taxable sale of a commodity that merely takes place on Indian land.
 
 [2]
 
 Therefore, the Court of Federal Claims properly held that the Cooks were not exempt from the payment of excise tax on diesel fuel under the rationale of the Supreme Court’s decision in
 
 Capoeman.
 

 CONCLUSION
 

 The Court of Federal Claims’ grant of summary judgment in favor of the United States is affirmed.
 

 AFFIRMED.
 

 [1]
 

 . Leaking Underground Storage Tank (LUST) taxes are assessed pursuant to 26 U.S.C. § 4041(d) for the storage of diesel fuel in underground storage tanks.
 

 [2]
 

 .
 
 In this case we do not need to decide whether a showing that the land is restricted or allotted is required when a treaty exemption on income derived directly from the land is otherwise applicable,