**LITTLE SIX, INC. and Shakopee Mdewakanton Sioux (Dakota) Community Plaintiffs–Appellants,**

v.

**UNITED STATES, Defendant–Appellee.**

No. 99–5083.

United States Court of Appeals, Federal Circuit.

April 24, 2000.

Mary J. Streitz, Dorsey & Whitney, LLP, of Minneapolis, Minnesota, argued for plaintiffs-appellants. Of counsel on the brief was Kurt V. BlueDog, BlueDog, Olson & Small P.L.L.P., of Minneapolis, Minnesota.

Charles F. Marshall, Attorney, Tax Division, Department of Justice, of Washington, DC, argued for defendant-appellee. With him on the brief were Loretta C. Argrett, Assistant Attorney General; and David English Carmack, Attorney.

James M. Schoessler, Jacobson, Buffalo, Schoessler & Magnuson, Ltd., of St. Paul, Minnesota, for amici curiae, Lower Sioux Indian Community in Minnesota, et al.

Before MAYER, Chief Judge, LOURIE and SCHALL, Circuit Judges.

LOURIE, Circuit Judge.

The Shakopee Mdewakanton Sioux (Dakota) Community and its wholly-owned corporation, Little Six, Inc., (collectively "Little Six") appeal from the decision of the United States Court of Federal Claims denying their claim for a refund of federal excise taxes and related occupational taxes paid on gaming operations conducted on their reservation between 1986 and 1992. *See Little Six, Inc. v. United States,* 43 Fed.Cl. 80 (Fed.Cl.1999). Because we conclude that Indian pull-tab games are exempt from federal wagering taxes under Chapter 35 of the Internal Revenue Code, we reverse.

## BACKGROUND

Little Six filed suit for a refund of federal excise taxes paid on wagers placed on "pull-tab" games operated on its reservation in Minnesota.[1] *See Little Six,* 43 Fed.

---

1. Pull-tab games are similar to state-conducted lotteries. Each pull-tab card has four or five tabs that can be peeled back to reveal whether the purchaser is entitled to a cash prize.

Cl. at 81. After conducting an audit, the Internal Revenue Service (IRS) assessed taxes against Little Six according to I.R.C. §§ 4401 and 4411. *See id.* Under section 4401(a)(1), a federal excise tax is imposed on "state authorized" wagers. Any person who is liable for the tax imposed by section 4401 must also pay a related occupational tax under section 4411. The taxes assessed for the period in question totaled $174,289, which Little Six paid under protest. *See id.* After the IRS denied its administrative claim, Little Six filed this suit in the Court of Federal Claims. *See id.*

The Court of Federal Claims granted the government's motion for summary judgment, and denied Little Six's cross-motion. *See id.* at 84. The court held that Indian gaming was subject to taxation under sections 4401 and 4411, rejecting Little Six's argument that those taxes did not apply to wagers on pull-tab games because they were not "state authorized." *See id.* at 82, 84. The court further held that Little Six had not demonstrated any valid exemption to such taxes, rejecting Little Six's alternative argument that 25 U.S.C. § 2719(d)(1) exempts Indian tribes from the taxes at issue. *See id.* at 82–84. Little Six now appeals to this court. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(3) (1994).

## DISCUSSION

We review the Court of Federal Claims' grant of a motion for summary judgment "completely and independently, construing the facts in the light most favorable to the non-moving party." *See American Airlines, Inc. v. United States,* 204 F.3d 1103, 1108 (Fed.Cir.2000) (quoting *Good v. United States,* 189 F.3d 1355, 1360 (Fed.Cir.1999)). In reviewing a denial of a motion for summary judgment, we give considerable deference to the trial court, and "will not disturb the trial court's denial of summary judgment unless we find that the court has indeed abused its discretion." *Suntiger, Inc. v. Blublocker Corp.,* 189 F.3d 1327, 1333 (Fed.Cir.1999). Summary judgment is appropriate only when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *See id.* When both parties move for summary judgment, the court must evaluate each motion on its own merits, resolving all reasonable inferences against the party whose motion is under consideration. *See McKay v. United States,* 199 F.3d 1376, 1380 (Fed.Cir.1999). If there are no material facts in dispute precluding summary judgment, "our task is to determine whether the judgment granted is correct as a matter of law." *Marathon Oil Co. v. United States,* 177 F.3d 1331, 1337 (Fed.Cir. 1999).

### A. State Authorized Wagers

We first address the parties' arguments concerning whether wagers placed on Indian pull-tab games are subject to taxation under I.R.C. §§ 4401 and 4411. Little Six argues that these tax provisions only apply to wagers authorized under state law and therefore do not apply to pull-tab games, which are authorized under federal law. The government responds that these tax provisions do apply to wagers on pull-tab games because all legal wagers, including those authorized under federal law, are "state authorized."

We agree with the government that wagers placed on Indian pull-tab games are subject to taxation under sections 4401 and 4411, because they are "state authorized." We reach this conclusion based upon the plain language of the relevant statutes. *See Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.,* 447 U.S. 102, 108, 100 S.Ct. 2051, 64 L.Ed.2d 766 (1980) ("[T]he starting point for interpreting a statute is the language of the statute itself. Absent a clearly expressed legislative intention to the contrary, that language must ordinarily be regarded as conclusive."). Section 4401(a) provides as follows:

(1) **State authorized wagers.**–There shall be imposed on any wager authorized under the law of the State in which

accepted an excise tax equal to 0.25 percent of the amount of such wager.

(2) **Unauthorized wagers.**—There shall be imposed *on any wager not described in paragraph (1)* an excise tax equal to 2 percent of the amount of such wager.

I.R.C. § 4401(a) (emphasis added). Section 4411 imposes a related occupational tax and provides in relevant part that:

(a) **In general.**—There shall be imposed a special tax of $500 per year to be paid by each person who is liable for the tax imposed under section 4401 . . .

(b) **Authorized persons.**—Subsection (a) shall be applied by substituting "$50" for "$500" in the case of—

(1) any person whose liability for tax under section 4401 is determined only under paragraph (1) of section 4401(a), and

(2) any person who is engaged in receiving wagers only for or on behalf of persons described in paragraph (1).

I.R.C. § 4411. Thus, according to the clear language of these two statutes, all wagers are either "state authorized" or "unauthorized," and any person who is liable for the excise tax under section 4401 must also pay the related occupational tax under section 4411.

The statutory basis for the regulation of Indian gaming is set forth in the Indian Gaming Regulation Act (IGRA), Pub.L. No. 100–497, 102 Stat. 2467 (1988) (codified as amended at 25 U.S.C. §§ 2701–2721 (1994 & Supp.1997)). Under the IGRA, tribes may operate "class II gaming" activities, which includes pull-tabs, provided that "such Indian gaming is located within a State that permits such gaming for any purpose by any person, organization or entity." 25 U.S.C. § 2710(b)(1)(A); *see also* 25 U.S.C. § 2703(7)(A)(i) (defining "class II gaming" to include pull-tabs). Thus, in order for pull-tab games to be authorized under federal law, class II gaming must be permitted by the state in which such gaming is located.

In the present case, the parties do not dispute the fact that Minnesota permits non-profit organizations to conduct pull-tab games. Thus, "such Indian gaming is located within a state that permits such gaming" by an organization. 25 U.S.C. § 2710(b)(1)(A). Accordingly, any wagers placed on Indian pull-tab games cannot be "unauthorized," because they are authorized under the IGRA. *See id.;* 25 U.S.C. § 2703(7)(A)(i). We therefore conclude that pull-tab games are authorized under both federal law and the law of the state in which they are conducted, and that wagers placed on those games are "state authorized" for the purpose of assessing taxes under sections 4401 and 4411 of the Internal Revenue Code.

### B. *Wagers Tax Exemptions*

Having determined that wagers placed on Indian pull-tab games are subject to taxation under sections 4401 and 4411, we next turn to the parties' arguments concerning whether Little Six is nevertheless exempt from excise and occupational taxes. Little Six argues that, under 25 U.S.C. § 2719(d)(1), Indian gaming is exempt from wagering taxes in the same manner as state gaming. Little Six contends that Indian pull-tab games should be exempt from the taxes imposed by sections 4401 and 4411, because state-conducted lotteries are exempt from them under I.R.C. § 4402(3) (exempting state-conducted lotteries from wagering taxes). Little Six further contends that, to the extent that section 2719(d)(1) may be unclear, the Indian canon of construction requires any ambiguity in the statute to be resolved in favor of the Indians.

The government responds that there is no provision in the IGRA that expressly exempts Indian pull-tab games from the taxes at issue. The government argues that section 2719(d)(1) only applies to the reporting and withholding of taxes from the winnings of players, and does not affect the tax liability of the entities that operate these games. The government finally argues that the Indian canon of construction does not apply in this case

because: (1) Congress did not intend to create an excise tax exemption; (2) the statute cannot be reasonably construed to confer a tax exemption; and (3) tax exemptions must be clearly expressed, not implied.

 We agree with Little Six that, although wagers placed on Indian pull-tab games are subject to taxation under I.R.C. §§ 4401 and 4411, Indian tribes are nevertheless exempt from such taxes under 25 U.S.C. § 2719(d)(1). Again, we begin with the language of the relevant statutes. Section 2719(d)(1) provides in relevant part that:

> The provisions of the Internal Revenue Code of 1986 (including sections 1441, 3402(q), 6041, and 6050I, *and chapter 35 of such Code* ) concerning the reporting and withholding of taxes with respect to the winnings from gaming or wagering operations *shall apply to Indian gaming operations* conducted pursuant to this chapter ... *in the same manner as such provisions apply to State gaming and wagering operations.*

25 U.S.C. § 2719(d)(1) (emphasis added). Thus, chapter 35 of the Internal Revenue Code applies to Indian gaming in the same manner as it does to state gaming. Section 4402(3), which is found in chapter 35 of the Internal Revenue Code, provides an express tax exemption for "any wager placed in a sweepstakes, wagering pool, or lottery which is conducted by an agency of a State acting under authority of State law." I.R.C. § 4403(3). Accordingly, section 2719(d)(1) can reasonably be construed as providing a tax exemption for wagers placed on lotteries and pull-tab games conducted by Indian tribes, because chapter 35 of the Internal Revenue Code provides such an exemption to state gaming operations.

 The government argues that Little Six is not exempt from wagering taxes,

because section 2719(d)(1) only applies to those tax provisions that concern "the reporting and withholding of taxes [from] winnings." 25 U.S.C. § 2719(d)(1). However, in construing a statute we must give effect and meaning to all of its terms if possible. *See Bailey v. United States,* 516 U.S. 137, 145, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995). While section 2719(d)(1) does contain the language cited by the government, it also explicitly refers to section 6050I and chapter 35 of the Internal Revenue Code, which clearly do not relate to "winnings." *See* I.R.C. § 6050I (returns relating to cash received in trade or business); I.R.C. §§ 4401–4405 (chapter 35) (taxes on wagering). Thus, the interpretation proposed by the government would render language in the statute superfluous, a result that we must attempt to avoid.

 In view of the inconsistency between the statute's reference to winnings and its reference to section 6050I and chapter 35 of the Internal Revenue Code, we conclude that the language in section 2719(d)(1) is ambiguous. Little Six argues that, to the extent that the statute is ambiguous, the Indian canon of construction requires section 2719(d)(1) to be construed in their favor. We agree. As stated by the Supreme Court, "statutes are to be construed liberally in favor of the Indians, with ambiguous provisions interpreted to their benefit." *Montana v. Blackfeet Tribe of Indians,* 471 U.S. 759, 766, 105 S.Ct. 2399, 85 L.Ed.2d 753 (1985).[2]

Citing *Cook v. United States,* 86 F.3d 1095 (Fed.Cir.1996), the government argues that the Indian canon of construction does not apply in this case, because tax exemptions must be clearly expressed by statute. In *Cook,* we held that members of the Onondaga Indian Nation were not exempt from federal taxes under 26 U.S.C. § 4041(a) for the sale of diesel fuel, be-

---

**2.** We note that the Tenth Circuit has recently held that 25 U.S.C. § 2719(d) does not provide tribes with the same exemption from federal wagering excise taxes enjoyed by the states. *See Chickasaw Nation v. United States,* 208 F.3d 871 (10th Cir.2000). We do not agree. The Tenth Circuit did not discuss the Indian canon of construction, which we believe fully applies here.

cause there was no language in the treaties at issue that could be construed as conferring an express exemption upon Indians. *See Cook*, 86 F.3d at 1097. However, we then stated that "[w]e recognize that if there are ambiguities in treaty language, they should be resolved in favor of the Indians." *Id.* (citation omitted). We further explained that none of the treaties at issue contained an ambiguity that could be construed as conferring an exemption. *See id.*

In the present case, having determined that the language of section 2719(d)(1) is ambiguous and can reasonably be construed as exempting Indian pull-tab games from the taxes at issue, we conclude that *Cook* is inapposite. Moreover, the Supreme Court has held that, "although tax exemptions generally are to be construed narrowly, in 'the Government's dealing with the Indians the rule is exactly the contrary. The construction, instead of being strict, is liberal.'" *Montana*, 471 U.S. at 766, n. 4, 105 S.Ct. 2399 (citing *Choate v. Trapp*, 224 U.S. 665, 675, 32 S.Ct. 565, 56 L.Ed. 941 (1912)). We therefore conclude that section 2719(d)(1) should be construed in favor of Little Six. The Court of Federal Claims erred in granting the government's motion for summary judgment and abused its discretion in denying Little Six's motion for summary judgment.

 Our conclusion is further supported by the legislative history of the IGRA. The ultimate goal in construing a statute is to give effect to the intent of Congress. *See In re Portola Packaging, Inc.*, 110 F.3d 786, 788 (Fed.Cir.1997). In fulfilling that duty, "we look not only to the particular statutory language, but to the design of the statute as a whole and to its object and policy." *Id.* (quoting *Crandon v. United States*, 494 U.S. 152, 158, 110 S.Ct. 997, 108 L.Ed.2d 132 (1990)). One of the primary purposes of the IGRA was to promote tribal economic development and self-sufficiency. *See* 25 U.S.C. § 2702 (1994). Equal treatment of tribes and states with respect to exemptions from federal wagering taxes is consistent with

this legislative intent, and is in accord with the concept of co-equal sovereignty. *See* S.Rep. No. 446, at 13 (1988) ("The Committee concluded that the compact process is a viable mechanism for setting various matters between two equal sovereigns.").

## CONCLUSION

For the above reasons, we conclude that Indian pull-tab games are exempt from federal wagering taxes under Chapter 35 of the Internal Revenue Code. Accordingly, we

*REVERSE.*